UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13 B 43900 |
| | ) | |
| Sam Callas, | ) | Chapter 7 |
| | ) | |
| | ) | Judge Janet S. Baer |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the motion filed by Michael K. Desmond, as chapter 7 trustee (the "Trustee") of the bankruptcy estate of Sam Callas (the "Debtor"), for authority to turn over alleged cash collateral proceeds to BCL-Capital Funding LLC ("BCL") [Docket No. 100]. On February 17, 2015, the Court granted the Trustee's motion in part, authorizing disposition of certain funds, but continued the matter with respect to the balance of the Trustee's motion. Gregory K. Stern, Monica C. O'Brien, Dennis E. Quaid, and Rachel S. Sandler (collectively "Stern") oppose the balance of the Trustee's motion, arguing that it relies on the erroneous assumption that the funds at issue are BCL's cash collateral. BCL and the Trustee filed briefs in support of the Trustee's motion. They rely on a stipulation, made while the case was pending under chapter 11 between the Debtor, as debtor-in-possession, and BCL pursuant to an agreed order for the use of cash collateral. Upon review, the Court concludes that the remaining funds at issue are not BCL's cash collateral. Accordingly, the balance of the Trustee's motion will be denied.

In addition, the disposition of the balance of the Trustee's motion effectively resolves two related matters pending before the Court: Stern's motion to allow and authorize payment of administrative claim [Docket No. 83] and Stern's motion to dismiss BCL's adversary complaint

[Adv. Case No. 14 A 00719, Adv. Docket No. 9]. As further discussed below, Stern's motion to allow and authorize payment of administrative claim will be granted in part and denied in part, and Stern's motion to dismiss BCL's adversary complaint will be granted.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (O).

## BACKGROUND

On November 12, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code[1] (the "Petition Date"). The Debtor retained possession of his assets as a chapter 11 debtor-in-possession and was represented by Stern until August 27, 2014, when Stern's motion to withdraw as Debtor's counsel was granted. On November 4, 2014, the Debtor's case was converted to a case under chapter 7, and the Trustee was appointed chapter 7 trustee of the Debtor's estate.

*The VA Payment*

As of the Petition Date, the Debtor owned commercial property commonly known as 1901-1911 Howard Street in Evanston, Illinois (the "Evanston Property"), which was subject to a mortgage and assignment of rents held by BCL.[2] Prior to the commencement of the bankruptcy case, the Debtor entered into a five-year lease with the Department of Veterans Affairs (the "VA") for office space in the Evanston Property. Under the terms of the lease, the VA was to

---

[1] Unless otherwise indicated, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and to the Federal Rules of Bankruptcy Procedure.

[2] Legal title to the Evanston Property is held by a land trust in which the Debtor owns a 100% beneficial interest. As part of the lending agreement in which the Evanston Property was pledged as collateral, the Debtor also granted BCL a collateral assignment of his beneficial interest in the land trust.

2

reimburse the Debtor for the cost of a build out for the Evanston Property totaling $566,386. The build-out reimbursement was structured as a one-lump payment of approximately $280,000, and the balance was to be amortized in the first five years of the lease.

According to the Debtor's Statement of Financial Affairs, the Debtor received the initial lump sum reimbursement payment from the VA (the "VA Payment") and subsequently transferred $265,000 to his wife, Katina Callas, on or about October 24, 2013. On or about November 12, 2013, an amount of $75,108.15 was deposited into a debtor-in-possession account established at Northern Trust Bank (the "DIP Account").

*The Cash Collateral Order*

On November 22, 2013, ten days after the Petition Date and while the case was pending under chapter 11, the Debtor filed a motion seeking authorization to use rents from the Evanston Property to pay operating expenses of the property. BCL did not object to the use of post-petition rents from the Evanston Property but objected to the Debtor's failure to acknowledge that the funds in the DIP Account were BCL's cash collateral. According to BCL, the DIP Account funds, as well as a $25,000 retainer paid to Stern before the Petition Date (the "Retainer"), were proceeds of the VA Payment, which constituted rents from the Evanston Property and were thus BCL's cash collateral; it was BCL's initial position that it would agree to the Debtor's use of cash collateral to pay necessary expenses of the Evanston Property provided that all excess cash—including the DIP Account funds and the Retainer as proceeds of the VA Payment—was paid over to BCL as adequate protection.

On January 16, 2014, the Court entered a final order authorizing the use of pre-petition collateral, including agreed-upon cash collateral, of BCL (the "Cash Collateral Order"). Pursuant to the Cash Collateral Order, the Debtor and BCL stipulated that:

> The Lender's Cash Collateral, as that term is defined by the Bankruptcy
> Code (the "Cash Collateral"), includes but is not necessarily limited to: (a) all
> rents generated by the Properties; and (b) the Debtor's wife transferred
> $75,108.15 to the Debtor which was deposited into the Debtor In Possession
> account at Northern Trust Bank (the "DIP Account") and the remaining
> balance as of December 20, 2013 is $68,728.74 [and] is in said DIP Account.

Cash Collateral Order, at 2 ¶ 6.[3] Under the Cash Collateral Order, the Debtor was authorized to use rents generated by the Evanston Property to pay agreed upon operating expenses of the property and make adequate protection payments to BCL. As further adequate protection, the Debtor was directed to transfer a total of $68,720 from the DIP Account to the Debtor's attorney's clients fund trust account (the "Segregated Account") and to keep these funds segregated until further order of the Court. Pursuant to the terms of the Cash Collateral Order, the Segregated Account funds would be used by the Debtor only to the extent that the rents

---

[3] The parties also stipulated that:

1. Debtor and Lender are parties to that certain Loan and Security Agreement dated May 15, 2013 (the "Loan Agreement").

2. Pursuant to the Loan Agreement Lender made a loan to Debtor in the amount of $1,100,000 (the "Loan") as evidenced by that certain Draw Note dated May 15, 2013 (the "Note").

3. As collateral for the Loan, Debtor pledged his beneficial interest in two land trusts (the "Trusts") pursuant to a Collateral Assignment of Beneficial Interest dated as May 15, 2013 (the "CABI"), and the Trusts provided mortgages and assignments of rents against two properties (the "Properties") pursuant to two Mortgages (the "Mortgages") and two Assignments of Rents (the "Assignments").

4. The Trusts' obligations under the Mortgages and Assignments were guaranteed by Debtor pursuant to that certain Continuing Unconditional Guarantee dated as of May 15, 2013 (the "Guaranty").

5. The Loan Agreement, Note, Mortgages, Assignments, CABI and Guaranty and all documents executed in connection therewith shall hereinafter be referred [to] together as the "Document[s]."

. . .

7. The Lender has valid and perfected liens in and upon all of the collateral granted to it under the Documents (the "Prepetition Collateral").

Cash Collateral Order, at 1-2.

generated by the Evanston Property were insufficient to make the adequate protection payments to BCL.

*Related Proceedings*

On August 18, 2014, Stern filed a motion to withdraw as the Debtor's attorney. Shortly thereafter, on August 26, 2014, Stern filed a motion for allowance of compensation and reimbursement of costs and expenses. Both motions were granted on August 27, 2014 and September 17, 2014, respectively.

On August 19, 2014, BCL filed a motion for relief from the automatic stay to allow BCL to proceed with state law remedies to gain possession of and title to the Evanston Property. BCL cited, among other justifications, alleged wrongful conduct by the Debtor before the Petition Date in disposing of the VA Payment, which he was contractually obligated to pay to BCL but did not, and the Debtor's failure to make adequate protection payments as required by the terms of the Cash Collateral Order. BCL's stay relief motion was granted on September 23, 2014. Also on September 23, 2014, the United States Trustee filed a motion to convert or dismiss the Debtor's chapter 11 case.

About two weeks later, on October 6, 2014, BCL initiated an adversary proceeding against the Debtor and Stern requesting turnover to BCL of the Segregated Account funds, as well as the Retainer, arguing that both constituted BCL's cash collateral as proceeds of the VA Payment (the "Adversary Proceeding"). According to BCL, it held an interest in the VA Payment by virtue of the assignment of rents and leases of the Evanston Property.

On October 31, 2014, Stern filed a motion to allow and authorize payment of administrative claim, seeking payment of the portion of the allowed claim not covered by the Retainer as an administrative claim from the funds remaining in the Segregated Account.

5

On November 4, 2014, the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7. Following conversion and the appointment of the Trustee, the funds remaining in the Segregated Account, totaling $49,546.10, were turned over to the Trustee.

Subsequently, on November 5, 2014, Stern filed a motion to dismiss BCL's adversary complaint. Stern's motion challenges BCL's claimed interest in the Segregated Account funds and the Retainer, arguing that BCL lacks both standing to pursue turnover and an interest in the funds at issue. On December 3, 2014, BCL filed a response in opposition to Stern's motion to dismiss the adversary complaint, as well as to Stern's motion to allow and authorize payment of administrative claim.

According to BCL's adversary complaint, prior to the Petition Date, the Debtor breached the terms of the note and related loan documents executed by the Debtor and BCL, prompting BCL to initiate foreclosure proceedings against the Evanston Property. The Debtor filed a petition for bankruptcy relief before BCL could foreclose on the collateral assignment of the Debtor's beneficial interest in the land trust and before a judgment of foreclosure on the Evanston Property was entered. Pursuant to the terms of the loan agreement executed between the Debtor and BCL, the Debtor agreed to transfer an amount equal to the VA Payment to BCL upon receipt of such payment.

On January 28, 2015, the Trustee filed a motion for authority to turn over cash collateral to BCL, seeking, in relevant part, authorization to turn over $25,000 of the $49,546.10 remaining in the Segregated Account to BCL as an interim distribution of BCL's alleged cash collateral. The partial distribution of the Segregated Account funds was to be made pursuant to an agreement reached between the Trustee and BCL, whereby BCL consented to payment of the

Trustee's fees, costs, and expenses incurred in administering the estate out of BCL's alleged remaining cash collateral.

## DISCUSSION

**A. Trustee's Motion for Authorization to Turn over Cash Collateral to BCL**

The Trustee's motion seeks authorization to turn over funds in the Segregated Account to BCL as a partial distribution of alleged cash collateral proceeds. Under section 725, a chapter 7 trustee "shall dispose of any property in which an entity other than the estate has an interest, such as a lien," before effectuating distribution of unencumbered property of the estate. 11 U.S.C. § 725; *see* 11 U.S.C. § 726. Section 363 defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a). Thus, the Trustee's proposed disposition of the Segregated Account funds is proper only if it can be established that the Segregated Account funds are BCL's cash collateral.

The Trustee's motion relies on the terms of the Cash Collateral Order to establish BCL's entitlement to turnover of the Segregated Account funds as cash collateral. Stern opposes the Trustee's motion, arguing that BCL does not have a valid interest in the Segregated Account funds and that, thus, turnover is improper. Stern does not dispute that under the Cash Collateral Order the parties stipulated that the Segregated Account funds were BCL's cash collateral. Stern argues, however, that the stipulation has no binding effect beyond enforcement of the Cash Collateral Order itself and that BCL does not have a valid security interest in the remaining funds in the Segregated Account.

1. Effect of the Cash Collateral Order

7

In support of his motion, the Trustee argues that he is "bound by the Court's . . . Cash Collateral Order and its explicit findings that the funds in the Segregated Account are BCL's cash collateral." Trustee's Reply, at 2-3. According to the Trustee, the Cash Collateral Order specifically provides that the Segregated Account funds are BCL's cash collateral and that BCL "has valid and perfected liens in and upon all of the collateral granted to it under the Documents." Trustee's Reply, at 1-2 (citing Cash Collateral Order). The Trustee relies on the general proposition that a post-conversion chapter 7 trustee is bound by the authorized actions of the debtor-in-possession. *Id.* at 2-3. This principle, however, does not justify the Trustee's position in this situation.

The Cash Collateral Order in this case does not, by its terms, foreclose consideration of Stern's arguments or prevent the Court from determining whether the remaining Segregated Account funds are BCL's cash collateral for purposes of authorizing the Trustee's proposed distribution. First, contrary to the Trustee's assertion that the Cash Collateral Order contains "explicit findings that the funds in the Segregated Account are BCL's cash collateral," the Court made no specific findings concerning the validity of BCL's interest in the funds at issue. Paragraphs 6 and 7 of the Cash Collateral Order are stipulations of the parties, not findings of the Court. *See* Cash Collateral Order, at 1 ("The Parties Stipulate As Follows:"). None of the terms that were ordered by the Court reflect a determination that BCL holds a valid interest in the Segregated Account funds for all purposes. *See* Cash Collateral Order, at 2-6 (listing new paragraphs 1 through 14 preceded by the phrase "IT IS HEREBY ORDERED THAT:"). The Court's approval of the parties' agreed terms was limited to a determination that the relief sought in the Debtor's motion requesting authorization for the use of cash collateral in the chapter 11

8

case was in the best interest of the estate at that time for that purpose. *See* Cash Collateral Order, at 1.

Second, as Stern points out, the terms of the Cash Collateral Order provide that the parties' agreed terms have no preclusive effect beyond enforcement of the Cash Collateral Order itself. *See* Stern's Resp., at 1-2. The Cash Collateral Order includes the following limiting terms:

> 11. Nothing in this Order shall prejudice the rights of the Lender under the Bankruptcy Code and applicable non-bankruptcy law to (a) seek further adequate protection; (b) propose or solicit acceptances of a plan of reorganization or liquidation following termination of the Debtor's exclusivity periods; (c) **object to or otherwise oppose any relief sought by any entity or party in this case**; and (d) assert that the Debtor is obligated to pay to Lender the default rate of interest and any other charges, penalties and costs required to be paid under the Documents for the period commencing on the Petition Date and continuing until all such amounts due under the Documents and hereunder are paid in full. **Nothing in this Order shall prejudice the rights of the Debtor to dispute any such arguments, actions, defenses, claims or otherwise.**
>
> 12. This Order and the transactions contemplated hereby shall be without prejudice to any and all rights, remedies, claims and causes of action which the Lender has or may have against any party who may be liable with the Debtor and otherwise under the Documents or any part thereof. **Nothing contained herein shall be deemed to be an admission, or constitute evidence, in connection with any matter or proceeding other than the enforcement of the terms of this Order**, including, but not limited to, any subsequent motion or application for use of cash collateral or for approval of debtor in possession financing.

Cash Collateral Order, at 5 (emphasis added). These limiting terms are inconsistent with the Trustee's claims that the Cash Collateral Order contained a conclusive and binding determination for all purposes that the Segregated Account funds constitute BCL's cash collateral.

The Trustee relies primarily on *Terlecky v. Peoples Bank, National Association (In re Amerigraph, LLC)*, 456 B.R. 349 (Bankr. S.D. Ohio 2011), in support of his contention that the stipulated terms classifying the funds set aside in the Segregated Account as BCL's alleged cash

9

collateral are binding and conclusive for purposes of the Trustee's present motion. That case, however, concerned very different agreed terms. In *Amerigraph*, a stipulation was made pursuant to an agreed order for the use of cash collateral, providing that the debtor-in-possession "waives and releases any and all claims against [the secured lenders], whether arising at law or in equity, including without limitation, any recharacterization, subordination, avoidance or other claim . . . pursuant to Sections 105, 510, 542 through 553 inclusive of the Bankruptcy Code." *Id.* at 355. The *Amerigraph* court found that such a stipulation could bar the chapter 7 trustee's later adversary proceeding to set aside alleged fraudulent transfers if adequate notice was given to the parties in interest. *Id.* at 355-57. The waiver and release in that case were accompanied by terms providing that the unsecured creditors' committee could bring any such actions during a period of sixty days, as well as terms explicitly providing that the agreed provisions would survive the entry of any future order, including conversion. *Id.* at 355. In contrast, as discussed above, the Cash Collateral Order here specifically limits the scope of the parties' agreement and specifies that the terms agreed to do not preclude future disputes.

The Trustee's reliance on two other cases is similarly unconvincing. In *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797 (8th Cir. 1992), the Eighth Circuit affirmed the determination of the courts below that stipulations agreed to by the debtor-in-possession were binding on the chapter 7 trustee to the same extent that they bound the debtor-in-possession. *Id.* at 800–01. A similar principle was upheld in *In re Superior Toy & Mfg. Co.*, No. 94 C 3181, 1995 WL 276024 (N.D. Ill. May 9, 1995), *aff'd*, 78 F.3d 1169 (7th Cir. 1996), in which the court concluded that payments made pursuant to the terms of a validly assumed executory contract could not later be avoided by the chapter 7 trustee as preferential. *Id.* at *8-9. Neither of these cases, however, discusses or cites to the existence of limiting provisions like those found in

paragraphs 11 and 12 of the Cash Collateral Order here. Those provisions preserve future disputes over the nature of BCL's interests under appropriate circumstances. Accordingly, the Cash Collateral Order does not bar Stern from now arguing that the remaining funds in the Segregated Account are not BCL's cash collateral.

2. BCL's Interest in the Segregated Account Funds

Throughout the case, BCL has asserted an interest in the Segregated Account funds, as well as the Retainer, pursuant to an assignment of rents executed in connection with the lending documents and the grant of a mortgage on the Evanston Property (the "Assignment of Rents"). In support of the Trustee's motion, BCL again references arguments which were made in the pending Adversary Proceeding to establish its interest in the Segregated Account funds.

Specifically, BCL contends that it holds an interest in the Segregated Account funds as proceeds of pre-petition rents from the Evanston Property. According to BCL, the funds constitute proceeds of the VA Payment, and BCL holds a pre-petition interest in that payment by virtue of the Assignment of Rents, which was perfected by recordation under Illinois law. The Assignment of Rents provides, in relevant part, that:

> Assignor grants, transfers, sets over and assigns to Assignee, Assignor's entire interest in and to any and all leases, subleases, and any agreements for the use or occupancy of the Premises (as hereinafter defined) (including all extensions and renewals thereof), now or hereafter existing (individually, a "Lease" and collectively, the "Leases"), and any and all rents, issues, deposits, income and profits, of and from that certain real estate located and more particularly described in Exhibit A, attached hereto and made a part hereof, and all buildings, structures and improvements now or hereafter erected thereon (collectively, the "Premises"). Without limitation of the foregoing, this Assignment covers all amounts due and payable to Assignor under the Leases, whether now due and owing or due and owing in the future, including, but not limited to, rent, additional rent, percentage rent, taxes, insurance and reimbursable costs and expenses, whether due in one payment or amortized over a period of time.

11

*See* BCL's Compl., Ex. C, at 2. There is no dispute that, prior to the Petition Date, the Debtor and BCL executed documents in connection with the extension of a loan, including a Draw Note secured, in part, by a mortgage on the Evanston Property and the Assignment of Rents. It is also undisputed that the Assignment of Rents was properly recorded in the county in which the property is located and that the Assignment of Rents granted BCL an interest in post-petition rents from the Evanston Property.

The only issue before the Court is whether BCL acquired, by virtue of the Assignment of Rents, an interest in the proceeds of the VA Payment which the Debtor received before the Petition Date. According to Stern, the Assignment of Rents did not grant BCL an interest in the proceeds of the VA Payment because the payment was received by the Debtor before BCL took a necessary step beyond recording to fully perfect its interest in rental income by acquiring possession of the Evanston Property.[4] In contrast, BCL argues that perfection of the interest granted under the Assignment of Rents by recording alone is sufficient to grant BCL an interest in the proceeds of the VA Payment. Based on the following analysis, the Court concludes that Stern's position is the correct one.

An assignment of rents creates an interest in real property and is governed by the law of the state in which the property is located—which, in this case, is Illinois. *In re Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1241 (7th Cir. 1994) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Under Illinois law, an assignment of rents creates a lien upon rents of the land that may be enforced upon default by taking affirmative steps to acquire possession of the land by the mortgagee or a receiver appointed on the mortgagee's behalf. *Id.* at 1241-42;

---

[4] Alternatively, Stern argues that the Segregated Account funds constitute proceeds of a fraudulent transfer since the VA Payment was given to the Debtor's wife before it was transferred into the DIP Account and, thus, cannot be subject to BCL's claimed interest. Because the Court concludes that BCL's interest in the rental income was not fully perfected for the reasons stated herein, it is not necessary to address Stern's alternative argument.

12

*Comerica Bank-Ill. v. Harris Bank Hinsdale*, 673 N.E.2d 380, 382-83 (Ill. App. Ct. 1996). This interest is perfected upon recordation in the real estate records in the county in which the property is located, granting the mortgagee priority "against all parties whose claims or interests arise or are perfected thereafter." 765 ILCS 5/31.5(b).

Perfection through recordation, however, does not automatically grant the mortgagee an interest in specific rents paid after default. Although an assignment of rents creates a security interest in rental income that is perfected upon recordation, "[t]he requirement that a mortgagee enforce its lien on rents by possession of the real estate renders an assignment of rents different from security interests in other property." *Bank of Edwardsville v. J.D. Monarch Dev. Co. (In re J.D. Monarch Dev. Co.)*, 153 B.R. 829, 833 (Bankr. S.D. Ill. 1993). While a security interest generally attaches to specific property pledged, "an assignment of rents allows the mortgagee to collect rents that come due after the mortgagee takes control of the property." *Id.*

In other words, an assignment of rents "do[es] not grant the mortgagee a lien on specific rents in the hands of the mortgagor . . . Instead, an assignment of rents provision allows the mortgagee to take certain steps after default . . . to obtain possession of the property and start collecting the rents; but until he takes such steps the mortgagor is entitled to keep the rents." *Wheaton Oaks*, 27 F.3d at 1242; *see also Comerica Bank*, 673 N.E.2d at 383 (concluding that rents collected after default but before the appointment of a receiver, while the mortgagor remained in possession of the property, belonged to the mortgagor); *Stevens v. Blue*, 57 N.E.2d 451, 453 (1944) (noting that a junior lienholder who procured the appointment of a receiver to collect rents from mortgaged property had a right to the rents collected until the holder of a superior interest under an assignment of rents enforced her senior lien). Accordingly, under Illinois law, a security interest in rents arising under an assignment of rents, while perfected

13

against third parties upon recordation, does not grant an interest in particular amounts, paid after default and constituting rents from the property, until affirmative steps are taken by the mortgagee to acquire possession of the property through either foreclosure or the appointment of a receiver pending foreclosure. *See, e.g., First Am. Bank, SSB v. Randall Plaza Ctr. Assocs., L.P. (In re Randall Plaza Ctr. Assocs., L.P.)*, 326 B.R. 133, 140 (Bankr. N.D. Ill. 2005) (applying Illinois law); *In re Cadwell's Corners P'ship*, 174 B.R. 744, 752-54 (Bankr. N.D. Ill. 1994) (same); *see also In re Austin*, Order Granting Debtor's Mot. for Sanctions at 6, No. 09-43562, Bankr. N.D. Ill., Apr. 8, 2015, ECF No. 33.

BCL argues that it holds a security interest in the funds paid to the Debtor pre-petition and while the Debtor remained in control of the mortgaged properties by virtue of the Assignment of Rents. It is undisputed that the Debtor filed his bankruptcy case before BCL foreclosed on the Evanston Property or the Debtor's beneficial interest.[5] Thus, the perfected but unenforced Assignment of Rents gave BCL no right to particular rents paid to the Debtor pre-petition. *See Comerica Bank*, 673 N.E.2d at 383 (noting that "the mere filing of the foreclosure action or request for a receiver is not sufficient to trigger the mortgagee's right to collect rents . . . but rather [it is] the trial court's affirmative ruling on such filing which entitles the mortgagee to the rents").

Section 363(a) defines "cash collateral," in pertinent part, as "cash . . . or other cash equivalents . . . in which the estate and an entity other than the estate have an interest and

---

[5] The Debtor had control of, and the right to collect rents from, the Evanston Property as owner of a 100% beneficial interest in a land trust. *See* Compl., at 3. "In an Illinois land trust . . ., property that is subject to a mortgage is 'owned' by a trustee whose only function is to hold title, leaving the management and control of the property entirely in the hands of the beneficiary of the trust." *Fid. Mut. Life Ins. Co. v. Harris Trust & Savs. Bank*, 71 F.3d 1306, 1308 (7th Cir. 1995). The ownership structure, however, does not affect the applicability of the general rule that rents are an incident of possession. *Id.* (noting that although the trustee is technically the owner and mortgagor, only the beneficiary—who controls the property and has the right to collect rents—can assign rents).

14

includes . . . rents . . . or profits of property . . . subject to a security interest as provided in section 552(b)." 11 U.S.C. § 363(a). Section 552(b) governs the extension of a pre-petition security interest in rents to "rents . . . acquired by the estate after the commencement of the case." 11 U.S.C. § 552(b)(2).[6] In this case, it is undisputed that the Assignment of Rents granted BCL an interest in rents of the Evanston Property and that *post-petition* rents constituted BCL's cash collateral. *See Wheaton Oaks*, 27 F.3d at 1245 ("Under Illinois law, an executed assignment of rents creates a lien on future rents, which is a sufficient interest in property to qualify as a security interest under § 552(b) . . ., making any *post-petition rents* cash collateral within the meaning of § 363(a)." (emphasis added)). At issue here, however, is whether BCL holds an interest in rents which were paid *pre-petition* to the Debtor.[7]

While a perfected yet unenforced assignment of rents constitutes a sufficient security interest in rents to make post-petition rents "cash collateral" within the meaning of sections 363 and 552(b)(2), it does not follow that rents collected by the Debtor pre-petition are cash collateral. *See In re KNM Roswell Ltd. P'ship*, 126 B.R. 548, 559 (Bankr. N.D. Ill. 1991); *see*

---

[6] Subject to enumerated exceptions, section 552(b) provides in relevant part:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property . . ., then such security interest extends to such rents . . . *acquired by the estate after the commencement of the case* to the extent provided in such security agreement . . ..

11 U.S.C § 552(b)(2) (emphasis added).

[7] In the Adversary Proceeding, BCL relies on *Wheaton Oaks* to support its position that perfection alone is sufficient to make pre-petition rents cash collateral. As explained here, however, the court's holding in *Wheaton Oaks* involved section 552(b)(2) and was explicitly limited to post-petition rents. *See Wheaton Oaks*, 27 F.3d at 1245. BCL also cites to *In re Woodfield Gardens Associates*, No. 97 B 26706, 1998 WL 276453, at *12 (Bankr. N.D. Ill. May 28, 1998), which applied the holding of *Wheaton Oaks* to rents paid pre-petition. As noted here, however, this expansion is not supported by *Wheaton Oaks* or other cases analyzing Illinois law. To the extent that *Woodfield Gardens* holds otherwise, the Court respectfully disagrees.

15

*also Jefferson-Pilot Invs., Inc. v. Capital First Realty, Inc.*, No. 10 C 7633, 2012 WL 1952656, at *7 (N.D. Ill. May 29, 2012).

For rent proceeds to qualify as cash collateral, BCL must hold a pre-petition interest in the monies such that they can be classified as "cash . . . or other cash equivalents . . . in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a); *see In re Prospect Studios, L.P.*, 478 B.R. 367, 371 (Bankr. W.D. Mo. 2012) (noting that rents paid and transferred to a third party pre-petition can constitute cash collateral "only to the extent that such funds are subject to a security interest or lien"). However, an assignment of rents does not create a security interest that attaches to particular rents in the hands of the mortgagor. *See Wheaton Oaks*, 27 F.3d at 1241 ("[A] mortgagor . . . is entitled to any rents generated from the property as long as he retains possession, without having to account for them to the mortgagee."). Outside of bankruptcy, an assignment of rents gives the mortgagee an interest in rental income collected after the assignment is enforced by acquiring possession of the mortgaged real estate either through foreclosure or the appointment of a receiver. *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 712 F.3d 1030, 1035 (7th Cir. 2013); *M. Ecker & Co. v. LaSalle Nat'l Bank*, 645 N.E.2d 335, 340 (Ill. App. Ct. 1994). "After default if a mortgagee takes action and a deficiency is apparent or develops, he may obtain a first claim on the rents. If he does not take action, however, he normally has no greater interest in the rents . . . than a general creditor." *August v. Mich. Ave. Nat'l Bank (In re Mich. Ave. Nat'l Bank)*, 2 B.R. 171, 181 (Bankr. N.D. Ill. 1980). Thus, the law in Illinois is clear: "[W]hen rentals are paid directly to the debtor, the security interest evaporates." *W. Bend Mut. Ins.*, 712 F.3d at 1035.

Since the rents here were paid to the Debtor before the commencement of this case and while he retained control of the property, BCL can assert no interest in the proceeds of the funds

at issue by virtue of the Assignment of Rents. Thus, the Court concludes that the Segregated Account funds are not BCL's cash collateral. Instead, the Segregated Account funds are property of the Debtor's estate, available for general estate distribution free and clear of any claims by BCL.

In light of the foregoing, the balance of the Trustee's motion for turnover is denied.

### B. Stern's Motion to Allow and Authorize Payment of Administrative Claim

Stern's motion requests that this Court enter an order allowing an administrative claim in the amount of $20,497.32 and authorizing payment of this claim from the Segregated Account funds pursuant to 11 U.S.C. § 503(b) or, alternatively and to the extent that the Segregated Account funds constitute BCL's cash collateral, pursuant to 11 U.S.C. § 506(c). BCL opposes Stern's motion on both grounds. Because the Court has already determined that the Segregated Account funds are not BCL's cash collateral, Stern's arguments under section 506(c) need not be considered.

Section 503(b) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). On September 17, 2014, the Court allowed Stern's compensation of $46,483.50 and reimbursement of costs and expenses of $1,513.82. Two days later, Stern filed an administrative proof of claim in the amount of $20,497.32, the amount not covered by the Retainer.

According to BCL, Stern's request for payment of fees is improper both because section 503(b) authorizes only allowance, not payment, and because payment of Stern's allowed claim must be made pursuant to section 507. The Court agrees with BCL. Section 503(b) authorizes only allowance of an administrative claim, not payment thereof. And, consistent with its

17

previous order allowing Stern's compensation, the Court will allow Stern's administrative claim. Further, payment of the claim is governed by section 507.

Section 507 sets out a system of priorities for claims against the estate. *See* 11 U.S.C. § 507. Pursuant to section 507, administrative expense claims of a chapter 7 trustee have priority over Stern's administrative expense claim. *See* 11 U.S.C. §§ 507(a)(1)(C), (b). Furthermore, an administrative claim granted under a cash collateral order as adequate protection has priority over every other claim. 11 U.S.C. § 507(b). Here, it is for the Trustee to determine in the first instance the appropriate priority of payment of claims. Accordingly, payment of Stern's administrative claim at this point is denied, and the Trustee is directed to review and pay claims in the case, including Stern's claim, pursuant to section 507.

### C. Stern's Motion to Dismiss BCL's Adversary Complaint

The other related matter pending before the Court is Stern's motion to dismiss BCL's adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Court views the complaint in the light most favorable to BCL and accepts as true all well-pleaded facts. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Although matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the Court may "take judicial notice of matters of public record," including the contents of the case docket. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

BCL's adversary complaint, which was filed before conversion of the Debtor's bankruptcy case, seeks turnover to BCL of funds controlled by the defendants, Stern and the

18

Debtor, and alleged to be BCL's cash collateral. Count I of the complaint requests turnover of the funds in the Segregated Account to BCL. The parties agree that turnover of the Segregated Account funds to the Trustee following conversion resolved any claims against Stern under Count I. Stern has no control over the Segregated Account funds. Count I will therefore be dismissed.

Count II requests turnover of the Retainer to BCL. To survive Stern's motion to dismiss, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although plausibility demands only "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010), "a plaintiff can plead itself out of court by pleading facts that show it has no legal claim." *Anago Franchising, Inc. v. IMTN, Inc.*, 477 F. App'x 383, 385 (7th Cir. 2012); *see also Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). As grounds for turnover, BCL argues that it holds an interest in the Retainer by virtue of the Assignment of Rents. However, in light of the Court's previous analysis, the complaint can prove no set of facts that would justify turnover of the Retainer to BCL as its cash collateral. Thus, Count II must be dismissed.

## CONCLUSION

In light of the foregoing, the three matters discussed herein are resolved as follows: (1) the balance of the Trustee's motion for authorization to turn over cash collateral to BCL will be DENIED; (2) Stern's motion to allow and authorize payment of administrative claim will be GRANTED IN PART and DENIED IN PART; and (3) Stern's motion to dismiss BCL's adversary complaint will be GRANTED.

Separate orders will be entered concurrent with this Memorandum Opinion.

Dated:  April 23, 2015

_____
Janet S. Baer
United States Bankruptcy Judge